FLOOD *v.* WELSH.

1. JOINT ADVENTURES—DEBTOR AND CREDITOR—SUBSEQUENT DEAL-INGS.

Evidence *held,* to show that by execution of a so-called security agreement at a time when defendant was insolvent, joint adventure relationship between him and plaintiff widow was changed to debtor and creditor, especially in view of the dealings subsequently had between the parties.

2. FRAUD—EVIDENCE—COMPROMISE AND SETTLEMENT.

Plaintiff's claim that she was fraudulently induced to accept by way of settlement a note for an amount less than what was actually due her as creditor of defendant must be determined on the basis of the evidence introduced on the trial.

3. SAME—BURDEN OF PROOF—EVIDENCE.

Party asserting fraud as the basis for relief has the burden of establishing claim of fraud by clear and satisfactory proof.

4. SAME—BURDEN OF PROOF—EVIDENCE—ACCOUNTING.

Burden of proving fraud in execution of note for an amount alleged to be much less than plaintiff claims was then due her from defendant *held,* not sustained by plaintiff in her accounting suit against defendant with whom she had first engaged in joint adventures and after accounting thereof was had relation thereafter was that of debtor and creditor.

5. ACCOUNTING—PAYMENT—RECORD.

Payments shown to have been made to plaintiff in suit for accounting *held,* to have been such that Supreme Court is

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 4] Generally as to fraud inducing compromise and settlement, see 11 Am Jur, Compromise and Settlement § 29.
[3, 4] 24 Am Jur, Fraud and Deceit § 255.
[6] 9 Am Jur, Cancellation of Instruments § 4.
[7] 9 Am Jur, Cancellation of Instruments §§ 60, 61, 63; 24 Am Jur, Fraud and Deceit § 278.

unable to say they did not fully discharge defendant's obligation to her.

6. CANCELLATION OF INSTRUMENTS—EXECUTED CONTRACTS.

Canceling an executed contract is an exertion of the most extraordinary power of a court of equity.

7. SAME—FRAUD—EVIDENCE.

Cancellation of an executed contract ought not to be done on the ground of fraud unless the fraud be made clearly to appear.

8. ACCOUNTING—FRAUD—DAMAGES—EVIDENCE.

Evidence in suit for accounting failed to show plaintiff had been damaged as the result of misrepresentation or fraud on part of defendant, if there was such.

9. APPEAL AND ERROR—ACCOUNTING—EVIDENCE—CREDIBILITY—WITNESSES—EQUITY.

The Supreme Court does not reverse decree in suit for accounting, where trial judge saw and heard witnesses in the case, was in a position to pass upon the credibility of their testimony and record does not show decree for defendant was not in accordance with the just rights of the parties.

Appeal from Oceana; Smith (Raymond L.), J., presiding. Submitted June 3, 1952. (Docket No. 8, Calendar No. 45,376.) Decided October 6, 1952.

Bill by Nina N. Flood against Clarence A. Welsh for an accounting and other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Alexis J. Rogoski* and *Robert Bunker Rogoski*, for plaintiff.

*Stewart J. Roche* and *Warner, Norcross & Judd* (*George S. Norcross* and *Harold S. Sawyer*, of counsel), for defendant.

CARR, J. Plaintiff brought suit in circuit court for an accounting and to obtain further incidental equitable relief based on the claim that defendant

had been guilty of fraudulent misrepresentations to her prejudice. The case resulted from business transactions between the parties which began early in the year 1927, or perhaps prior thereto, and continued for several years. Plaintiff was at the time a widow, and was the owner of real estate and of personal property which she had received from the estate of her husband.

Shortly prior to the associations referred to, defendant counseled plaintiff with reference to an investment from which she realized a profit of approximately $31,000. It is her claim that as a result of this transaction she acquired confidence in defendant's business ability and in his honesty and integrity. In any event, the parties entered into a series of joint ventures toward which plaintiff contributed money from time to time, such transactions being handled by defendant. It is plaintiff's claim that they agreed to share equally in the profits resulting from their operations.

Neither party kept a complete and accurate record of the different ventures that were undertaken. On the trial of the case a ledger was introduced in evidence, in which, as the testimony relating thereto indicates, each party made entries during a period of several months beginning March 11, 1927. Many of such entries, however, are not in satisfactory form, and it may well be doubted if the exhibit can be regarded as an accurate account of the dealings of the parties even during the limited period of time covered by it.

While some of the investments made by defendant apparently proved profitable, it is conceded that in 1929 heavy losses were sustained because of expenditures made and indebtedness incurred in the drilling of oil wells. The ventures in this field were unfortunate, and as a result defendant became insolvent. Apparently motivated by a desire to protect

plaintiff as far as possible, defendant and his wife, on April 29, 1929, executed a written instrument reciting that defendant had borrowed from and was indebted to the plaintiff for large sums of money, and that it was the desire of the parties to secure the repayment thereof. Reference was made to an assignment attached to the agreement which the parties executed, by the terms of which defendant and his wife undertook to convey to plaintiff defendant's interest in all oil and gas leases, wells, products, drilling equipment, and all personal property used in connection with his oil and gas drilling operations within the State, which he then owned. The assignment was accepted by the plaintiff presumably for the purpose for which it was executed, that is, to protect her in the repayment of the money that she had advanced to defendant.

On August 1, 1929, defendant gave plaintiff his note, payable on demand, in the sum of $15,000, and on October 15th following 2 notes, in like form, for $10,000 each were executed and delivered. The parties are not in accord as to the aggregate of the amounts advanced by plaintiff to defendant, the former claiming that during their business associations she gave to defendant approximately $65,000, while defendant insists that at the time of the agreement made on April 29, 1929, the aggregate of advances was $35,000, the total of the 3 notes mentioned. In March, 1932, defendant executed and delivered to plaintiff 2 notes in the sums of $2,000 and $1,138.42 respectively. The precise nature of this transaction is not explained in the record. The same situation obtains with reference to other dealings between the parties of which, apparently, no record was kept and with reference to which their memories have failed.

During the period beginning August 5, 1929, and ending April 1, 1938, plaintiff received a total of

$8,886.37 from the Hart Petroleum Company, in which defendant was financially interested. It was his claim on the trial of the case in circuit court that such payments were in fact made on his obligation to her to enable her to meet her expenses and those of her son. No other satisfactory explanation is suggested in the proofs. In 1942, defendant paid plaintiff the further sum of $2,000, the receipt of which is admitted. Subsequent to 1932 defendant's financial situation improved as a result of certain transactions into which he entered, including investments in oil fields that turned out profitably and a contract with the Michigan highway department.

On the 7th of April, 1944, following negotiations between the parties, defendant executed and delivered to plaintiff the following obligation:

"Hart, Michigan.   April 7, 1944.

"After date I promise to pay to the order of Nina N. Flood $40,000 payable at the rate of $3,000 or more per year at the rate of no percent interest.

"This note is in full payment of any and all moneys due Nina N. Flood by myself and is to supersede any and all other notes & agreements previously executed.

"The shares of stock now held by Nina N. Flood in Hart Petroleum Company and Oceana Oil Producers, Inc. to be held as collateral security until payment of this note, and upon payment of this note said shares are to be returned and issued to myself, my heirs or assigns without consideration by Nina N. Flood, her heirs or assigns.

"(s) C. A. WELSH
C. A. Welsh

"Approved and accepted:   April 7, 1944.
(s) NINA N. FLOOD
Nina N. Flood"

Payments on the foregoing obligation were made from time to time by defendant, in the total sum of

$35,000. The final checks were delivered on December 15, 1949, the record indicating that 3 of them were postdated. However, they were cashed by plaintiff, the last payment being received by her shortly before the present suit was instituted. It is the claim of the defendant that the balance of the obligation was paid by his acquiring from the Hart Petroleum Company an obligation owing to it by plaintiff, in the aggregate amount of $6,034.13, which he applied against the debt owing by him to plaintiff. He claims, in consequence, and the trial court so found, that he had actually paid to her, or for her use and benefit, sums of money in excess of the obligation of April 7, 1944.

After listening to the proofs of the parties, the trial judge concluded that as a result of the execution and delivery of the security assignment and the 3 notes totalling $35,000 the relationship between the parties thenceforth became that of debtor and creditor, that the aggregate of the amounts turned over to defendant by plaintiff up to that time did not exceed the amount of the notes, that under the proofs the note given on April 7, 1944, for $40,000 was not less than the amount owing to plaintiff by defendant at that time, that plaintiff was bound by her acceptance of such undertaking, and that defendant's obligation thereunder had been fully paid and satisfied. In accordance with such findings a decree was entered denying to plaintiff the relief that she sought and dismissing the bill of complaint. From such decree plaintiff has appealed, claiming in substance that the evidence in the case does not justify the factual conclusions of the trial judge.

While the record with reference to the original agreement of the parties is not entirely clear, it is a fair inference that they contemplated a series of joint ventures which would continue as long as the arrangement proved mutually satisfactory. How-

ever, certain of the transactions into which defendant entered on behalf of himself and plaintiff proved ill-advised from the financial standpoint, as a result of which defendant, as before noted, was insolvent, or practically so, at the time of the execution of the security agreement on April 29, 1929. It is a fair conclusion from all the circumstances of the case, including what was actually done by the parties, that it was then intended to change the status of the plaintiff to that of a creditor. Because of the relationship that had existed between them defendant concluded, as he claimed on the trial, that he should protect her as fully as possible. It is obvious that had there been an accounting and final settlement at that time the money that plaintiff had invested in the various joint ventures undertaken would have been largely, if not entirely, lost to her.

The execution of the notes suggests also that the intention of the parties was to give to plaintiff the status of a creditor, and the total of the obligations was presumptively considered at that time as covering the total of plaintiff's advances. If, as plaintiff claims, such advances exceeded $35,000, it is reasonable to assume that notes would have been executed for the full amount. It does not appear that there was any difference of opinion between the parties at that time. We are in accord with the conclusion of the trial judge that after the 1929 transactions plaintiff's status was that of a creditor of the defendant. Dealings between the parties thereafter tend to support such finding.

As before noted, defendant in March, 1932, executed and delivered to plaintiff further notes in the aggregate amount of $3,138.42. He also caused to be paid to her through the Hart Petroleum Company, over a period of approximately 9 years, the sum of $8,886.37. It is significant that plaintiff did not during this period insist that defendant account

to her for any portion of the profits from the various operations in which, to her knowledge, he engaged. Plaintiff's claim, as set forth in her bill of complaint, that such transactions were in fact joint ventures in the profits of which she was entitled to participate is not tenable. Furthermore, the provisions of the note of April 7, 1944, and the acceptance thereof by plaintiff indicate that the parties considered that the relationship existing between them was that of debtor and creditor.

It is further urged on behalf of appellant that she was induced to accept the note for $40,000 in settlement of defendant's obligations to her because of fraudulent misrepresentations made to her by defendant at that time. In substance, she claims, 1st, that the property now possessed by defendant was all acquired as the result of joint ventures in the profits of which she was entitled to share, and that in consequence she now is, as alleged in her bill of complaint, "lawfully entitled to a half interest therein," and, 2d, that if the relationship admittedly existing between the parties prior to 1929 had been changed to that of debtor and creditor, the amount advanced by her to defendant and remaining unpaid on the 7th of April, 1944, greatly exceeded the amount of the note executed and delivered on that date. She contends that defendant, in order to induce her to settle for less than what was actually owing to her, falsely represented that he was financially unable to pay more than $40,000, and that she accepted the note because of such representation. Defendant denies any fraud or misrepresentations whatever on his part, and asserts that the amount of the advances made by plaintiff totalled approximately $35,000 rather than the $65,000 claimed by her. Based on the testimony in the case, the trial court sustained the claim of the defendant as to the amount of his indebtedness to plaintiff.

The argument of plaintiff that she was entitled to share in the proceeds of transactions in which defendant engaged subsequent to 1929 does not require further consideration. Her claim that she was fraudulently induced to accept by way of settlement a note for an amount less than what was actually due to her as a creditor of the defendant must be determined on the basis of the evidence introduced on the trial. Having asserted fraud the burden rested on her of supporting such claim by clear and satisfactory proof. As said in *Zimmerman* v. *Feldman*, 217 Mich 390, 399:

"When one bases his claim for relief upon the ground of fraud it becomes his duty to establish the fraud by evidence that is convincing that the fraud was perpetrated."

See, also, *Achenbach* v. *Mears*, 272 Mich 74; *Groth* v. *Singerman*, 328 Mich 615. It must be said in the instant case that plaintiff has failed to sustain the burden of proof resting on her with reference to the issue of fraud. Furthermore, if, as claimed by defendant and found by the trial court, she has received the full amount due and owing to her, she has not, in any event, been damaged. She has, it appears, received from defendant payments approximating $52,000. On the basis of the record that is before us we cannot say that such payments did not fully discharge defendant's obligation to her.

In effect plaintiff asks that she be decreed not bound by the note of April 7, 1944, that for the reason urged by her such obligation, even though fully paid, be disregarded, and that defendant be found indebted to her in accordance with her claim. In *Atlantic Delaine Company* v. *James*, 94 US 207, 214 (24 L ed 112), it was said:

"Canceling an executed contract is an exertion of the most extraordinary power of a court of equity.

The power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear; never for alleged false representations, unless their falsity is certainly proved, and unless the complainant has been deceived and injured by them."

The foregoing statement was quoted with approval by this Court in *Oliver* v. *Baldwin,* 201 Mich 336, 362.

In the case at bar plaintiff has failed to prove that she has been damaged as the result of misrepresentations or fraud on the part of defendant, if there was such. The trial judge saw and heard the witnesses in the case, including the parties to the suit, and was in consequence in position to pass on the credibility of their testimony. We should not reverse the decree unless satisfied that it is not in accordance with the just rights of the parties. *In re George L. Nadell & Co., Inc.,* 294 Mich 150; *Barar* v. *Phillips,* 328 Mich 267. The record in the case does not require or justify a conclusion that plaintiff has established her right to the equitable relief sought.

The decree is affirmed. Defendant may have costs.

DETHMERS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.

The late Chief Justice NORTH did not sit.